UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SUSAN JACKSON and PATRICK G. JACKSON,

    Plaintiffs,

v.

TELEGRAPH CHRYSLER JEEP, INC., WELLS
FARGO FINANCIAL ACCEPTANCE AMERICA,
INC., AUTO AMERICA FINANCE CENTERS,
L.L.C., and FRANK DURAN,

    Defendants.

Case No. 07-10489
Honorable Julian Abele Cook, Jr.

### ORDER

In a case that was filed in the Wayne County Circuit Court of Michigan on November 10, 2006, the Plaintiffs, Susan and Patrick Jackson, have accused the Defendants[1] of violating a series of federal and state statutes that are designed to regulate, among other things, transactions involving the sale of motor vehicles.[2] On January 31, 2007, the case was removed to this federal court by one of the Defendants, Wells Fargo Financial Acceptance America. On August 29, 2008, three of the

---

[1] The Plaintiffs have identified the Defendants as (1) Telegraph Chrysler Jeep, Inc., (2) Wells Fargo Financial Acceptance America, Inc., (3) Auto America Finance Centers, L.L.C., and (4) Frank Duran.

[2] The Plaintiffs' claims include (1) violation of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*, (2) violation of the Retail Installment Sales Act, Mich. Comp. Laws §§ 445.851 *et seq.*, (3) violation of the Michigan Motor Vehicle Installment Sales Contracts Act, Mich. Comp. Laws §§ 566.301 *et seq.*, (4) violation of the Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901 *et seq.*, (5) fraud, breach of contract, breach of obligation of good faith, and negligence, (6) violation of the Credit Organizations Act, 15 U.S.C. §§ 1679 *et seq.*, (7) violation of the Credit Reform Act, Mich. Comp. Laws §§ 445.1851 *et seq.*, (8) violation of Michigan's motor vehicle code, and (9) violation of the Magnuson-Moss Warranty Act, 15 U.S.C.A. §§ 2301 *et seq.*

Defendants (Auto America Finance Centers, Telegraph Chrysler Jeep, and Frank Duran), filed a motion for summary judgment, the substantive contents of which were subsequently joined by Wells Fargo Financial Acceptance America. The Plaintiffs did not file a response until November 22, 2008.

I.

As a preliminary matter, the Court first notes that the Plaintiffs' response to the Defendants' summary judgment motion was filed nearly two months late. E.D. Mich. LR 7.1(d)(1)(B) states that "A response to a [summary judgment] motion must be filed within 21 days after service of the motion." Prior to the November 22nd filing, no request had been made by the Plaintiffs to extend the deadline for their tardy response. Inasmuch as this document was filed late without leave, the Court directs its Clerk to strike the Plaintiffs' response (Docket # 32) from the record and notes that this tardy pleading will not be considered in rendering a decision on the Defendants' motion. Thus, (1) the Defendants' motion to strike the tardy response, which was filed on November 25, 2008, is granted (Docket #33) and the Plaintiffs motion for an extension of time to file a response, which was filed on December 9, 2008, is denied (Docket #36).[3]

II.

According to the Defendants, the Plaintiffs first spoke with Frank Duran at Telegraph Chrysler Jeep on March 22, 2006 and reflected their interest in purchasing a used automobile. They had apparently chosen to purchase a used car from Telegraph Chrysler Jeep because a friend of

---

[3]The Plaintiffs, both of whom are represented by counsel, point to a lack of their knowledge of the federal court rules as the reason for the tardy filing. This is not a good or sufficient basis for failing to comply with the Local Rules.

their son, Lance Smiddy, worked at this dealership.[4]

On the following day, they returned to Telegraph Chrysler Jeep to purchase a 2004 Ford Taurus that had been test driven by them during their initial visit. The substance of the negotiations that accompanied their subsequent purchase of the car is in dispute and, as such, it constitutes the heart of this dispute. It is the Plaintiffs' contention that Duran offered to structure their loan for the payment of the 2004 Taurus in such a manner that it would fully satisfy the balance of a debt on another used car.[5] According to the Plaintiffs, this financial arrangement would consolidate their car payments into one monthly payment. Moreover, they submit that Duran (1) represented that the sales price of the 2004 Taurus included a service contract that could be used at any Ford dealership and (2) fraudulently represented that the vehicle had certain features.[6] What is apparently not disputed is that following the negotiations the Plaintiffs jointly signed all the sales documents and took possession of the 2004 Taurus.

### III.

When deciding a motion for summary judgment, the Court must consider any pleadings and discovery materials on file in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56(c); see *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11

---

[4] Duran and Smiddy were employees of Auto American Finance Centers, L.L.C., which operated the used car department at Telegraph Chrysler Jeep.

[5] At the time of their encounter with Duran, the Plaintiffs were in the process of making payments for the purchase of a used 2000 Ford Taurus. According to the Plaintiffs, they declined to accept a proposal by Duran to turn in their 2000 Ford Taurus because its trade in value of approximately $2,000 was considerably less than their outstanding balance of $6,000 on their loan for the car.

[6] According to the Plaintiffs, Duran told them that the 2004 Taurus had power seats, a premium sound system, ABS braking system, premium wheels, and a theft recovery system.

(6th Cir. 1984). The purpose of a summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Citrate*, 477 U.S. 317, 323-24, 106 S.Ct. 2548 (1986). The moving party, therefore, bears the burden of showing the absence of any genuine issue of material fact. *Id*. at 323. A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Thus, a summary judgment is appropriate where (1) the evidence offered in support of the motion is so overwhelming that the proponent must prevail as a matter of law, *Anderson*, 477 U.S. at 252, or (2) the opponent fails to rebut the motion with evidence that establishes a question of material fact that is of consequence to the case. *Celotex*, 477 U.S. at 322; *see also* Fed. R. Civ. P. 56(e)(2). Finally, "evidence [that] is merely colorable, or is not significantly probative," is not sufficient to rebut summary judgment.

IV.

Turning to the Defendants' motion for summary judgment, the Court will now address their arguments as they pertain to the Plaintiffs' claims below *in seriatim*.

A.  Truth in Lending Act Violations

The Defendants, citing to the Retail Installment Contract and Security Agreement ("Agreement"), argue that they have complied with the requirements in the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*, as well as the separate requirements of 12 C.F.R. §§ 226.17 and 226.18 ("Regulation Z"). Specifically, they point to the "TILA box" on the Agreement.

Given the purpose of TILA as a remedial statute that is designed to address predatory creditor practices, its requirements are broadly construed in favor of the consumer and strict compliance with its provisions is necessary. *Inge v. Rock Financial Corp.*, 281 F.3d 613 (6th Cir.

4

2002); *Begala v. PNC Bank, Ohio, Nat. Ass'n.*, 163 F.3d 948 (6th Cir. 1998). Section 1638(a) of the TILA requires disclosure of certain information,[7] which must take place before credit is extended[8] and before consummation of the transaction.[9] Further, Regulation Z requires that these disclosures are presented "clearly and conspicuously." 12 C.F.R. 226.17(a)(1).

After a careful review of the record, it appears that the Defendants have complied with the applicable TILA requirements. The TILA box on the Agreement in this case includes the heading "TRUTH IN LENDING DISCLOSURES." Beneath the heading are various boxes that are clearly designated, with each box containing a term printed in bold capital letters, as well as a brief explanation of the term, which is followed by a corresponding number. The TILA box is conspicuously located in the middle of the page. It clearly identifies (1) the Plaintiffs' finance charge as $8,052.44, (2) the annual percentage rate as 13.65 percent, (3) the total payments of $25,179.12, and (4) a calculation that is based on seventy two monthly payments which were to begin on April 22, 2006. The TILA box also contains the following language: "Security: You are giving a security interest in the Motor Vehicle purchased." At the bottom of the Agreement are the signatures of the Plaintiffs, along with a date of March 23, 2006, which indicated their agreement to the terms on the preceding pages. A second set of the Plaintiffs' signatures appears under the language "BUYER ACKNOWLEDGES DELIVERY OF A COPY OF THIS RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT."

---

[7]The information which is pertinent to the Plaintiffs' complaint, includes the (1) "finance charge" (§ 1638(a)(3)), (2) the "annual percentage rate" (§ 1638(a)(4)), (3) the "total of payments" (§ 1638(a)(5)), (4) the number and period of payments (§ 1638(a)(6)), and (5) a statement identifying where credit has been secured (§ 1638(a)(9)).

[8]*See* 15 U.S.C. § 1638(b)(1).

[9]*See* 12 C.F.R. § 226.17(b).

In their complaint, the Plaintiffs maintain that the Agreement contained a "hidden finance charge" because the Defendants failed to disclose the market value of the 2004 Taurus, which presumably differed from the cash price the Defendants listed on the Agreement. The only disclosure requirement that makes reference to a market value is found in § 1638 is (a)(15), which pertains to transactions where credit is based on the consumer's principal dwelling. This requirement is not applicable to the facts in the instant case. The Plaintiffs have not pointed to any TILA provisions or any other authorities to support this claim. Moreover, it does not appear that the "cash price," which was listed on the Agreement by the Defendants, is contrary to any other TILA requirement.

For all of the reasons stated above, the Court grants the Defendants' motion for summary judgment as to the Truth in Lending Act claim.

B.   Michigan Retail Installment Sales Act

The Plaintiffs complain that the Defendants failed to include certain disclosures in the sales contract as required by the Michigan Retail Installment Sales Act, Mich. Comp. Laws § 445.851, *et seq*. Once again, the Defendants point to the TILA box on the Agreement and rely on Mich. Comp. Laws § 445.851a in asserting that they have fully complied with the necessary disclosure requirements.

Mich. Comp. Laws § 445.851a states the following: "Compliance with the requirements of the truth in lending act . . . is compliance with the disclosure provisions of sections 3(d) and 12(b) [of the Michigan Retail Installment Sales Act]." Thus, the Court concludes, for the reasons which have been stated above in connection with the Plaintiffs' Truth in Lending Act claim, that the Defendants have complied with the disclosure provisions under the Michigan Retail Installment

Sales Act.

Apart from the disclosure requirements, the Plaintiffs also allege that the Defendants (1) required them to sign the contract with impermissible blank spaces and (2) backdated the contract by three days. In response, the Defendants assert that the Plaintiffs' signatures on the sales contract create a presumption of compliance with the provisions of the Michigan Retail Installment Sales Act.[10]

Mich. Comp. Laws § 445.856 states:

> A retail installment contract shall not be signed by any party thereto when it contains blank spaces of items which are essential provisions of the transaction . . . . The buyer's acknowledgment, conforming to the requirement of subsection (b) of section 3, of delivery of a copy of the contract shall be presumptive proof . . . of such delivery and of compliance with this subsection and any other requirement relating to completion of the contract prior to execution thereof by the buyer, in any action or proceeding.

Mich. Comp. Laws § 445.853(b) requires delivery of the contract to the buyer before the presumption in § 445.856 is operative.

As noted above, the Plaintiffs signed the section of the Agreement, in which they collectively acknowledged the receipt of a copy of the sales contract. In addition, both of them signed under bold text that reads, "Notice to buyer. Do not sign this contract in blank." Therefore, because the Plaintiffs acknowledged their receipt of the contract, the presumption in favor of the completion of the contract contained in Mich. Comp. Laws § 445.856 is operative. Inasmuch as the Plaintiffs have not produced any evidence which rebuts this presumption, they cannot sustain

---

[10] The Defendants also contend that a person who signs a contract cannot later declare it invalid on the basis that he or she did not read the contract or understand its provisions, except where there is a showing of fraud or mutual mistake. The Court will address these arguments below in its discussion of the Plaintiffs' fraud claims.

their claims under the Michigan Retail Installment Sales Act. Therefore, the Court must grant the Defendants' motion for summary judgment as it relates to the Plaintiffs' Michigan Retail Installment Sales Act claim.

C.   Motor Vehicle Installment Sales Contract Act

The Plaintiffs submit that the Defendants failed to comply with the disclosure requirements of the Motor Vehicle Installment Sales Contract Act ("MVISCA"), Mich. Comp. Laws § 566.301, *et seq.*[11] For the reasons that have been stated above, the Court concludes that the Defendants did comply with the disclosure requirements of the MVISCA. Hence, the Defendants' motion for the entry of a summary judgment as to this claim is granted.

D.   Michigan Consumer Protection Act

The Defendants deny that they violated the Plaintiff's rights under the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.901, *et seq.*, by engaging in various unfair and deceptive acts, methods, and practices.[12] In Michigan, a violation of the MCPA is analogous to a common law fraud claim. ("[I]t is proper to construe the provisions of the MCPA 'with reference to the common-law tort of fraud.'" *Zine v. Chrysler Corp.*, 236 Mich. App. 231, 283; 600 N.W.2d 384, 398 (1999) (quoting *Mayhall v. A.H. Pond Co., Inc.*, 129 Mich. App. 178, 182-83; 341 N.W.2d

---

[11] These requirements, as listed in § 566.302, include (1) the cash price, (2) amount of the down payments, (3) the remaining unpaid balance, (4) the cost of insurance if the seller has agreed to procure any, (5) the principal balance owed, (6) the amount of the finance charge, and (7) the number, duration and time period for the installment payments.

[12] The Plaintiffs' fourteen specific allegations of MCPA violations by the Defendants can generally be summarized as having made false representations of material facts relating to the challenged transaction, which caused them to become confused as to the salesperson's authority. It is their contention that this confusion caused them to sign the contract, and, thereby, become obligated to pay a price that was grossly in excess of the fair market value for a similar vehicle.

268 (1983)).

The elements which the Plaintiffs must prove in order to sustain their claims of fraud are the following: (1) the Defendants made a material misrepresentation, (2) their representations were false, (3) the Defendants knew or should have known that the representation were false, (4) the Defendants intended for the Plaintiff to rely upon the false representation, and (5) the Plaintiffs incurred damages through their reliance upon the representation. *Foreman v. Foreman*, 266 Mich. App. 132, 141; 701 N.W.2d 167 (2005). The Plaintiff must also prove that their reliance was reasonable. *Game On Ventures, Inc. v. General RV Center, Inc.* 587 F.Supp.2d 831 (E.D. Mich. 2008) (citing *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 690-91; 599 N.W.2d 546 (1999)). Moreover, their "reliance is unreasonable as a matter of law when the terms of the parties' contract specifically contradict the representations on which [they claim] to have relied." *Id*.

In *Novak*, *supra*, the plaintiff's reliance was unreasonable where he relied upon oral statements that were contradicted by a written agreement which contained an integration clause. *Novak*, 235 Mich. App. at 689. Likewise, the Plaintiffs have based their MCPA claim on oral statements made prior to or contemporaneously with the signing of the sales contract. However, the Retail Buyer's Order expressly states, "THE SALESPERSON HAS NO AUTHORITY TO MAKE AND DEALER SHALL NOT BE BOUND BY ANY PROMISES OR REPRESENTATIONS UNLESS THEY ARE WRITTEN ON THIS ORDER AND APPROVED BY DEALER'S AUTHORIZED REPRESENTATIVE." During her deposition, Susan Jackson made two acknowledgments which appear to be facially adverse to her interests in this action; namely, (1) none of the writings contained the verbal agreements on which she and her husband now claim to have relied upon, and (2) she would have understood that at least one of the

agreements was not binding if she had read the documents.[13]

Under the circumstances, the Court determines that the Plaintiffs' asserted reliance was not reasonable as a matter of law. Hence, their MCPA claims cannot be sustained which, in turn, warrants the entry of the Defendants' motion for summary judgment as to this claim.

E.    Fraud and/or Misrepresentation

The Plaintiffs claim that the Defendants fraudulently misrepresented material facts about the sale of the 2004 Taurus in order to induce them into making the purchase. For the reasons stated above, this Court finds that their reliance upon the Defendants' alleged misrepresentations was not reasonable. Therefore, the Plaintiffs' claims of fraud cannot be sustained.

F.    Breach of Contract

It is the Plaintiffs' position that their contract was materially breached by the Defendants who failed to fully satisfy the loan on the 2000 Taurus in a timely manner. Contrary to this allegation, there is no evidence in the written documents of any agreement to pay off the 2000 Taurus. However, it appears that the Plaintiffs, who appear to suggest that they were deliberately misled about the written agreement - or at least had a misunderstanding about its provisions - are apparently seeking to invalidate the written portion of their contract in favor of the parties' alleged oral agreement to pay off the 2000 Taurus loan. Under Michigan law, a person, who signs a contract, cannot later attempt to invalidate the agreement because the aggrieved party "did not read [the contract] or . . . supposed that it was different in its terms." *Stopcynski v. Ford Motor Co.*, 200

---

[13]Page 31 of Susan Jackson's deposition transcript reads as follows:
"Q:  So would you agree with me, that had you actually taken the time to read these documents before you signed them, that you would have understood that, in fact, the 2000 Taurus was not going to be paid off?
A:    If I indeed read all this, I would say that."

Mich. App. 190, 193 (1993) (citing *Paterek v. 6600 Ltd.*, 186 Mich. App. 445, 450 (1990)). On the other hand, a person may invalidate a contract if the aggrieved party's failure to read the contract was induced by fraud or mutual mistake, and was not due to "carelessness alone." *Paterak*, *supra*, (citing *Moffit v. Sederlund*, 145 Mich. App. 1, 8 (1985)).

Susan Jackson acknowledged that (1) she did not read the sales documents before signing them, and (2) no one prohibited her from reading the documents.[14] This Court has not been presented with any evidence of a mutual mistake. As such, the Plaintiffs cannot sustain their claims of fraud because if they signed the contract without first reading the written language within the document it due to their "carelessness alone." Therefore, the Plaintiffs cannot invalidate the written agreement, and their claim of breach of contract cannot be sustained.

G.  Breach of the Obligation of Good Faith

The Plaintiffs allege that the Defendants violated their statutory duty of good faith under Mich. Comp. Laws § 440.1203. The Defendants maintain that the law in Michigan law does not recognize an independent cause of action for breach of good faith and fair dealing.

This state statute provides that "[e]very contract or duty within [the UCC] imposes an obligation of good faith in its performance or enforcement." The official comment to this section adds: "This section does not support an independent cause of action for failure to perform or enforce in good faith. Rather, this section means that a failure to perform or enforce, in good faith,

---

[14]Pages 28-29 of Susan Jackson's deposition transcript read, in reference to the sales documents:
>"Q: Did you read that document before you signed it?
>A: No, I did not.
>Q: Did anyone prohibit you from reading that document before you signed it?
>A: No."

11

a specific duty or obligation under the contract, constitutes a breach of that contract . . . ." The thrust of the Plaintiffs' complaint suggests that the alleged bad faith occurred when the Defendants' failed to pay off the loan on the 2000 Taurus. There is no evidence within the parties' written sales documents that the Defendants possessed any obligation to satisfy the 2000 Taurus loan.

Thus, there is no evidence that the Defendants performed any of their contractual obligations in bad faith. Hence, in the opinion of the Court, no reasonable juror could find a breach of the obligation of good faith by the Defendants. Accordingly, their motion for summary judgment as to this claim is granted.

H.  Negligence

The Plaintiffs claim that the Defendants were negligent in failing to pay the balance on the 2000 Taurus loan. However, as noted above, there is no evidence that the Defendants had any obligation to perform, as suggested by the Plaintiffs as it relates to the 2000 Taurus. Absent any such showing of a duty, a reasonable juror could not find in favor of the Plaintiffs. *Rose v. National Auction Group, Inc.*, 466 Mich. 453, 469 (2002) ("With regard to the negligence claim, a necessary element to establish such a claim is showing a breach of a duty owed to the plaintiff." (citing *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (2000)).

I.  Credit Repair Organization Act

The Plaintiffs contend that the Defendants violated the Credit Repair Organizations Act ("CROA"). The Defendants deny this charge, asserting that they are not subject to the definition of a "Credit Repair Organization" under the CROA.

Courts have noted that the CROA makes a distinction between "credit counseling" services, which are prospective in nature, and "credit repair" services, which retrospectively offer "false

hopes of absolution for confessed past credit sins." *Zimmerman v. Cambridge Credit Counseling Corp.*, 529 F.Supp. 2d, 254, 274 (D. Mass 2008) (quoting *Limbert v. Cambridge Credit Counseling Corp.*, 328 F.Supp. 2d 360, 364 (S.D.N.Y. 2004)). The Plaintiffs have not offered any evidence which suggest that the Defendants (1) held themselves out as a credit repair agency, (2) offered to "repair" bad credit after the fact, or (3) "crossed the boundary from credit counseling to credit repair" in their dealings with the Plaintiffs. *Zimmerman*, 529 F.Supp. 2d at 275. For these reasons, the Court concludes that a reasonable juror could not find that the Defendants meet the definition of a "credit repair organization" under the CROA. Thus, as the moving parties, the Defendants are entitled to a summary judgment as to this claim.

J.   Credit Reform Act

The Plaintiffs have pointed to several provisions within the Credit Reform Act ("CRA")[15] that were allegedly violated by the Defendants. However, the Agreement does state that the Plaintiffs would be charged a late fee of "$15.00 or 10%" of the monthly payment, which is more than the amount authorized by Mich. Comp. Laws § 445.1856(1)(c) ("A late fee allowed by this subdivision shall not exceed $15.00 or 5% of the installment payment, whichever is greater"). If the Defendants charged a late fee pursuant to the provision contained in the Agreement, it would be a violation of the statutory provision. But, the Plaintiffs have not offered any evidence that the Defendants actually charged a late fee in excess of $15 or 5% of the monthly installment payments. Hence, the Court concludes that no reasonable juror would conclude that there has been a violation

---

[15] Specifically, the Plaintiffs allege that the Defendants: (1) included a contractual provision constituting a non-explicit waiver of a buyer's rights, (2) required the buyer to pay excessive fees or charges, (3) providing for or charging a late fee that exceeds $15 or 5% of the installment payment, whichever is greater, and (4) requiring as a condition of approving a loan that the buyer contract for one or more additional financial services offered by the regulated lender.

of this statutory provision. Thus, the Defendants are entitled to summary judgment as to the CRA claims.

K.    Motor Vehicle Code

The Plaintiffs submit that the Defendants violated the Michigan Motor Vehicle Code by failing to provide them with copies of the titles to the 2004 Taurus. Mich. Comp. Laws § 257.204(1) states, "the secretary of state shall observe, enforce, and administer this act." Where a right is not provided by the common law in Michigan, a plaintiff may find relief by statute, but only where the statute (1) explicitly states that it creates a private cause of action, or (2) provides no alternative means of enforcement of its provisions aside from a private cause of action. *Pitsch v. ESE Michigan, Inc.*, 233 Mich. App. 578, 586-87 (Mich. App. 1999). The Michigan Motor Vehicle Code does not explicitly create a private cause of action. Rather, this legislative enactment states that its provisions shall be enforced by the secretary of state. Accordingly, the Defendants are entitled to summary judgment on this claim.

L.    Magnuson-Moss Warranty Act

It is the specific contention of the Plaintiffs that the Defendants violated the Magnuson-Moss Warranty Act. The Defendants reject this contention, asserting that they do not meet the definition of being a "warrantor" under this Act.

Putting aside the issue as to whether the Defendants are "warrantors" for purposes of Magnuson-Moss, the Plaintiffs, aside from offering generalities on this issue, have failed to proffer any evidence which, if admitted into the record, could convince a reasonable juror that the warranties were deceptive or improperly disclaimed. To the contrary, Susan Jackson signed a document which explains that the 2004 Taurus included a "LIMITED WARRANTY." Moreover,

both of the Plaintiffs signed a document entitled "DAIMLER CHRYSLER SERVICE CONTRACT." Furthermore, Susan Jackson admitted during her deposition that when the 2004 Taurus had a mechanical problem which was covered by the service contract, the problem was fixed at no charge to her pursuant to the service contract. Thus, the Defendants are entitled to summary judgment on the Plaintiffs' claimed violations of the Magnuson-Moss Warranty Act.

For all of the reasons that have been stated above, the Court concludes that a reasonable juror, after examining all of the evidence in a light that is most favorable to the Plaintiffs, would not have a legally sufficient evidentiary basis to find for the Plaintiffs. Therefore the Court finds that the Defendants' motion for summary judgment on each of the Plaintiffs' claims must be, and is, granted.

IT IS SO ORDERED.

Dated:  March 31, 2009                                           s/Julian Abele Cook, Jr.
       Detroit, Michigan                                  JULIAN ABELE COOK, JR.
                                                              United States District Court Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 31, 2009.

                                                                                                            s/ Kay Doaks
                                                                                                            Case Manager